UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MANDY D.,[1]

              Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

Case No. 3:20-CV-0954-YY

OPINION AND ORDER

YOU, Magistrate Judge.

     Plaintiff Mandy D. seeks judicial review of the final decision by the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Supplemental

Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-

1383f.  For the reasons set forth below, that decision is AFFIRMED.

     Plaintiff protectively filed for SSI on December 8, 2016, alleging disability beginning on

September 1, 2001.  Plaintiff's application was initially denied on May 1, 2017, and upon

reconsideration on July 24, 2017.  Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"), which took place on April 9, 2019.  At that hearing, plaintiff and a vocational

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

expert testified.  The ALJ issued a decision on April 25, 2019, finding plaintiff not disabled within the meaning of the Act.  Tr. 13.  The Appeals Council denied plaintiff's request for review on April 13, 2020.  Tr. 1-3.  Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. § 416.920;

*Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).  The claimant bears the burden of proof at steps one through four.  *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The Commissioner bears the burden of proof at step five.  *Id.* at 953-54.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date of December 8, 2016.  Tr. 15.  At step two, the ALJ determined plaintiff had the following severe impairments: borderline personality disorder, depression, bipolar disorder, and anxiety.  Tr. 15 (citing 20 CFR 416.920(c)).

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 16.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined "claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. Due to mental impairments, she can understand, remember and carry out only short and simple instructions consistent with level two reasoning that can be learned in 30 days or less. She can only make simple work-related judgments and decisions. She can have no more than frequent interactive contact with the public, coworkers, and supervisors."  Tr. 17.

At step four, the ALJ found plaintiff was unable to perform any past relevant work.  Tr. 21.  However, at step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including industrial cleaner, laundry worker, and warehouse worker.  Tr. 22-23.  Thus, the ALJ concluded plaintiff was not disabled.  Tr. 23.

**DISCUSSION**

Plaintiff contends the ALJ erred by improperly discounting her subjective symptom testimony and rejecting medical opinion testimony.

**I.      Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."

The decision under review is dated April 25, 2019.  Tr. 25.  Therefore, SSR 16-3p applies.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  Tr. 18.  However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

Specifically, the ALJ found that "medical findings do not support the extent of limitation alleged by the claimant." Tr. 18. In particular, the ALJ observed that plaintiff established treatment in March and April 2016 so she could resume psychotropic medications but then did not seek care again until February 2017. *Id.* The record supports the ALJ's observation. *See* Tr. 262 (March 21, 2016 chart notes); Tr. 277 (February 17, 2017 chart notes indicating plaintiff "[w]as seeing psych and therapist and needs to be reconnected"). Moreover, the ALJ observed that while plaintiff established care in November 2017, she "denied needing ongoing therapy because she is able to manage her life without it." Tr. 20. Indeed, the record shows that plaintiff "was . . . enrolled in MH services . . . from November 2017-August 2018," but said, "I quit coming because I felt I had learned exercises and techniques to deal with the stressors I encounter." Tr. 323. The "case law is clear that if a claimant complains about disabling pain but fails to seek treatment, . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ further relied on plaintiff's failure to take prescribed medication:

> The record shows that she does not take medication . . . She admitted in the record that she stopped taking medication and relies on marijuana to manage her mood, tension, and pain. The record also shows that she admitted Lithium controlled her symptoms well for over 15 years but the side effects were undesirable, this suggests that her symptoms are responsive to psychotropic medication when she avails herself to medication management.

Tr. 21.

The ALJ cited to treatment notes that describe how plaintiff stopped taking Lithium in November 2015, after 15 years, Tr. 20 (citing B1F/7 (March 2016 chart note indicating plaintiff had taken lithium for 16 years but quit in December), B6F/3 (February 2017 chart note indicating

plaintiff last used medication in 2015), B8F/32 (plaintiff reported taking Lithium for 15 years and stopping in November 2015), and reported she "feels much better since she stopped taking medications because she is 'feeling all her emotions.'" *Id.* (citing B8F/55). The ALJ also cited chart notes from September 2017 that indicate plaintiff remained unmedicated, Tr. 19, and chart notes from October 2018, that indicate plaintiff was "taking no prescribed psychotropic medication." Tr. 20 (citing B8F/33). In discrediting subjective symptom testimony, an "ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ also observed that "[d]espite taking no prescribed psychotropic medication, [plaintiff] presented with normal mood and an engaged and receptive attitude." Tr. 20 (citing B8F/33). This shows that plaintiff either refused to take medication that she needed or did not take medication because she did not need it. *See also* Tr. Tr. 20 (citing B8F/57) (observing that in August 2018 plaintiff "endorsed doing 'very well' over the past 4 sessions" and "report[ed] overall improved mood since entering treatment [and] stopping alcohol use"). Either way, this evidence supports the ALJ's assessment regarding plaintiff's subjective symptom testimony.

The ALJ further discounted plaintiff's subjective symptom testimony because plaintiff was working. The ALJ observed that plaintiff "was able to obtain a job and sustain employment working up to 30 hours a week since January 2019." Tr. 21; *see also* Tr. 17 (noting plaintiff testified that she obtained a job at Subway making sandwiches in January 2019). The ALJ noted that plaintiff worked six to eight hour shifts and received no accommodations at work. Tr. 18.

The ALJ additionally noted that plaintiff "worked part-time in the fall of 2018 until December 2018 cleaning houses" and worked at a restaurant.  Tr. 17.  "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled."  *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

Finally, the ALJ observed there was evidence that plaintiff was pursuing disability benefits for "secondary gain," Tr. 20, specifically, the ALJ noted "[t]he record shows . . . she was motivated to engage in behavioral health services in order to obtain disability benefits."  Tr. 21. The ALJ cited chart notes from a September 2017 appointment where plaintiff stated, "I just need the person with the letters and the paper on the wall to sign off on my case," and an October 2017 appointment where plaintiff "stated she was not interested in continued BH support" but was "required to engage in mental health services to complete requirements for her SSDI case." Tr. 19 (citing B12F/5, 8).  The ALJ further observed that in November 2017, plaintiff established care with another provider and "reiterated that she is seeking services to satisfy SSDI requirements."  Tr. 20.  Additionally, the ALJ noted that on January 23, 2019, plaintiff "presented with normal mental status to complete SSI paperwork."  *Id.*

"By definition, every claimant who applies for Title II benefits does so with the knowledge—and intent—of pecuniary gain. That is the very purpose of applying for Title II benefits. The same motivation afflicts every applicant for workers compensation benefits, and every personal injury plaintiff. If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible."  *Altorfer v. Colvin*, No. 3:14–CV–01933–HZ, 2015 WL 9255544, at *8 (D. Or. Dec. 18, 2015).  "Thus, while an ALJ may consider motivation and the issue of secondary gain in evaluating symptom testimony, she must identify specific, clear and

convincing evidence to do so." *Lehigh v. Comm'r, Soc. Sec. Admin.*, No. 6:16-CV-0902-JR,

2017 WL 4324545, at *7 (D. Or. Sept. 5, 2017), *report and recommendation adopted,* 2017 WL

4322819 (D. Or. Sept. 25, 2017) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1139–40 (9th Cir.

2014)).  Here, the ALJ identified clear and convincing evidence—that plaintiff "stated she was

not interested in continued BH support" but was "required to engage in mental health services to

complete requirements for her SSDI case."  Tr. 489.  Nevertheless, even if this reason is

insufficient, the ALJ cited other clear and convincing reasons to discount plaintiff's subjective

symptom testimony, as discussed above.

## II.    Medical Opinion Testimony

Plaintiff claims the ALJ erred in rejecting the opinion of Scott Alvord, Psy.D., and

Cynthia Lorenzo, QMHP.

### A.    Relevant Law[2]

The ALJ is responsible for resolving ambiguities and conflicts in the medical

testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If no conflict arises

between medical source opinions, the ALJ generally must accord greater weight to the opinion of

a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830

(9th Cir. 1995).  The ALJ should also give greater weight to the opinion of an examining

physician over that of a reviewing physician.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

"Where the treating doctor's opinion is not contradicted by another doctor, it may be

rejected only for 'clear and convincing' reasons supported by substantial evidence in the

---

[2] Plaintiff filed for benefits on December 8, 2016.  Since then, the law has changed so that, for claims filed on or after March 27, 2017, controlling weight is no longer given to any particular medical opinion, such as that of a treating physician.  *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).

record." *Id*. (treating physician) (quoting *Reddick*, 157 F.3d at 725); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725); *Widmark*, 454 F.3d at 1066.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and internal quotation marks omitted). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### B.    Scott Alvord, Psy.D.

Alvord conducted a psychological evaluation of plaintiff on April 7, 2017. Tr. 287. The ALJ observed that Alvord had opined plaintiff "would have difficulty accepting instructions from supervisors, interacting with co-workers and the public, performing work activities on a consistent basis without special or additional instructions/accommodation, maintaining regular attendance in the workplace, completing a normal workday/workweek without interruptions from her impairments, and dealing with usual stress encountered in the workplace." Tr. 19.

The ALJ gave Alvord's opinion "partial weight":

> Dr. Alvord's opinion is given partial weight, as he concluded that the claimant
> was so psychiatrically ill that she would have difficulty performing most aspects
> of work activity, which is not consistent with the claimant's testimony regarding
> good work performance and ability to work with others to sustain employment.
> She also testified that her job tasks are easy enough that she will probably not lose

her job due to being overwhelmed and she admitted that she controls her temper
with breathing techniques.

Tr. 19.  Elsewhere in the decision, the ALJ noted that plaintiff had testified she was "always a

good employee" and dealt with anger toward her co-workers "by praying and using breathing

techniques."  Tr. 18.  In fact, plaintiff did testify that she was a "good employee."  Tr. 49.  She

also testified that when she encounters difficulty with co-workers, she removes herself from the

situation, Tr. 46, uses the breathing techniques her counselor taught her, and "prays a lot."  Tr.

47.  Further, plaintiff testified that she performed the same duties as other employees and

received no special treatment or accommodations.  Tr. 41.

     An inconsistency between a medical opinion and the claimant's activities constitutes a

specific and legitimate reason to discount that medical opinion.  *Ghanim v. Colvin*, 763 F.3d

1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600–02

(9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a

claimant's daily activities a specific and legitimate reason to discount the treating physician's

opinion)).  Thus, the ALJ provided a specific and legitimate reason, supported by substantial

evidence, to discount Alvord's opinion.

     Plaintiff argues "[t]he ALJ considered [her] testimony about her work out of context in

making this finding."  Pl. Br. 7.  Plaintiff asserts, "[a]s [she] explained to Dr. Alvord, at the

hearing, and elsewhere in the record, her impairments interfered with her ability to sustain

employment once she had obtained it."  *Id.*  But the ALJ's decision did not pertain to whether

plaintiff could sustain the work.  Rather, the ALJ discredited Alvord's opinion that plaintiff

"would have difficulty performing most aspects of work activity" because there was evidence

that plaintiff in fact could perform "good work."  Moreover, as the Commissioner correctly

notes, "Dr. Alvord's opinion was not conditioned on [plaintiff's] ability to sustain certain

activities." Def. Br. 6. Instead, Alvord opined that plaintiff "would have difficulty interacting with co-workers and the public" and "difficulty dealing with usual stress encountered in the workplace." *Id.*

### B.    Crystal Lorenzo, QMHP

Lorenzo is a qualified mental health professional employed by Mid-Columbia Center for Living. Tr. 300. Plaintiff began seeing Lorenzo in November 2017. Tr. 346. Lorenzo completed a Mental Source Statement in March 2019. Tr. 457. As the ALJ's decision notes, Lorenzo opined that plaintiff "would have moderate limitation in the ability to complete the workday/workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods" and "[w]ith respect to social interactions, [] Lorenzo opined that the claimant would be moderately limited in the ability to respond appropriately to supervisors and get along with coworkers and peers with marked limitations in the ability to respond appropriately to changes in the work setting." Tr. 20. Lorenzo further opined that, based on cumulative limitations, it was likely plaintiff would be off-task over 30% of the time during a 40-hour week and would have to miss work two days of work per month. Tr. 459.

The ALJ gave Lorenzo's opinion "little weight":

Ms. Lorenzo's opinion is given little weight because her conclusions suggest extreme limitations that are internally inconsistent with her treating source statement, as well as her progress notes covering November 2017 through January 2019. For instance, she indicated that the claimant has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate and the claimant is likely to be off-task during a 40-hour workweek over 30 percent of the time (B9F/3). This is inconsistent with the claimant's testimony regarding the ability to work up to 30-hour workweeks with coworkers performing a variety of tasks as well as Ms. Lorenzo's conclusion that the claimant is only mildly limited in her ability to maintain attention and concentration for extended periods. Ms. Lorenzo noted that the claimant's

treatment team does not include a medically acceptable source such as a medical doctor or psychologist (B9F/3). The undersigned acknowledges that Ms. Lorenzo has a history of behavioral health treatment with the claimant that has been sporadic over time. Her opinion is less persuasive due to inconsistency with the record and her own treatment notes.

Tr. 20-21.

Indeed, Lorenzo opined that plaintiff had no significant limitations in the ability understand, remember, and carry out both detailed and very short and simple instructions and the ability to make simple work-related decisions. Tr. 457-58. Lorenzo also opined that plaintiff had no significant limitations in the ability to interact with the general public. Tr. 458. Lorenzo found plaintiff had marked limitations in only two areas: the ability to respond appropriately to changes in the work setting and difficulties in maintaining social functioning. Tr. 458-59. The ALJ accounted for these limitations in the RFC. The ALJ also properly discounted Lorenzo's opinion because it was inconsistent with the fact plaintiff worked 30-hours per week. *See Ghanim*, 763 F.3d at 1162.

In sum, the ALJ provided specific and legitimate reasons, supported by substantial evidence, to discount both Alvord's and Lorenzo's opinions.

### III.    Appointment of Commissioner Saul

Finally, plaintiff contends that Commissioner Saul was unconstitutionally sworn in as Commissioner on June 17, 2019, while her request for review by the Appeals Council was pending. Suppl. Br. 2. Plaintiff argues that the decision by the ALJ is therefore constitutionally defective. *Id.*

Arguments such as this have been considered and rejected by numerous courts. *See Jeremiah Jordan, Plaintiff, v. Comm'r of Soc. Sec. Admin., Defendant.*, No. CV-21-08022-PCT-

DGC, 2022 WL 842902, at *2 (D. Ariz. Mar. 22, 2022) (collecting cases).  For the same reasons, it is rejected here.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  March 28, 2022.


                       /s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge